IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER, | Case No. ___-cv-_____ |
| Plaintiff, | |
| v. | **COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |
| SCOTT FRAKES, in his official capacity as Director of the Nebraska Department of Correctional Services and in his individual capacity | |

COMES NOW, Plaintiff Human Rights Defense Center, and for its Complaint against Defendant Scott Frakes, individually and in his official capacity as Director of the Nebraska Department of Corrections Services, states:

## INTRODUCTION

1.     This is a civil rights action under 42 U.S.C. § 1983 seeking, among other relief, to enjoin Director Frakes from enforcing the Nebraska Department of Correctional Services' ("NDCS") unconstitutional policy of prohibiting certain published material from entering its correctional facilities. That policy prohibits inmates from ordering books unless (1) the book is obtained from Edward R. Hamilton Bookseller Company ("Hamilton"), a wholesaler of books and other publications; (2) is a correspondence/college course book not available through Hamilton; or (3) is a "[r]eligious book[]" not available through Hamilton. This policy violates HRDC's First and Fourteenth Amendment rights to send publications to prisoners.

## PARTIES

2.     HRDC is a 501(c)(3) non-profit entity organized under the laws of Washington with its principal place of business in Lake Worth, Florida. HRDC

1

advocates on behalf of the human rights of people held in U.S. detention facilities, including state prisons. In addition to its monthly journals *Prison Legal News* and *Criminal Legal News*, HRDC publishes several books and distributes dozens of others. They include books on the criminal justice system, legal reference books, and self-help books of interest to prisoners.

3.      Defendant Scott Frakes is the Director of Correctional Services and, pursuant to section 83-173 of the Nebraska Revised Statutes, shall supervise and be responsible for the administration of the NDCS; adopt and promulgate rules and regulations for the management, correctional treatment, and rehabilitation of NDCS inmates and for the administration of NDCS facilities; and shall exercise all powers and perform all duties necessary and proper in carrying out those responsibilities. Defendant Frakes has held this position since 2015.

## JURISDICTION AND VENUE

4.      This Court is possessed of jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, because it arises under 42 U.S.C. § 1983, a federal statute that provides redress for the deprivation under color of State law of federal rights secured by the Constitution of the United States. This Court has jurisdiction to afford damages, equitable relief, and declaratory relief under 28 U.S.C. §§ 1343, 2201, and 2202.

5.      Venue is proper in this Court under 28 U.S.C. § 1391 because Director Frakes resides in Nebraska and because the challenged conduct has occurred entirely within Nebraska.

2

## **FACTUAL ALLEGATIONS**

6.    The NDCS has in effect a policy, Policy 113.23, applicable to all NDCS facilities and expressly approved by Defendant Frakes, which provides in relevant part:

> Inmates may only order books and receive books from Edward R. Hamilton. Any book orders received from other than Edward R. Hamilton will be returned to sender. Correspondence/college course books not available from Edward R. Hamilton shall be available as outlined in Policy 106.01, *Education Services.* Religious books not available from Edward R. Hamilton is [sic] identified in I.B. above.

This excerpt is referred to hereinafter as the "Approved Vendor Policy", and may be found in paragraph I.K.2 of Policy 113.23, attached hereto as **Exhibit A**.

7.    The Approved Vendor Policy has been in effect since May 17, 2021.

8.    On information and belief, there is no "Policy 106.01, *Education Services*," published or otherwise available to the public.

9.    Paragraph I.B of Policy 113.23 provides:

> Religious items must be approved by the facility Religious Coordinator. Religious Orders can be ordered in any month and are not included in the four order limit. The Religious Coordinator will approve the order and forward to the canteen for processing.

10.    Paragraph I.K of Policy 113.23 provides that Miscellaneous Orders, which includes orders for books, "can be submitted in any month and are not included in the four order limit of canteen special orders." No other provision of Policy 113.23 or any other NDCS policy limits the amount of book orders an inmate may place.

11.    Hamilton is a Connecticut-based wholesaler of books, periodicals, and newspapers that distributes its inventory online through HamiltonBooks.com LLC at <https://www.hamiltonbooks.com>, or through direct mail order.

12.     Hamilton sells—either in whole or in part—overstocked or damaged books from book publishers, some of which "have been handled many times."

13.     Hamilton does not sell any of the books published by HRDC: *The PLRA Handbook: Law and Practice Under the Prison Litigation Reform Act*; *Disciplinary Self-Help Litigation Manual - 2nd Edition* (2015); *Prison Education Guide* (2016); and *The Habeas Citebook: Ineffective Assistance of Counsel - 2nd Edition* (2016) and *1st Edition* (2010).

14.     Hamilton does not sell the vast majority of books distributed by HRDC. Of the approximately 45 publications sold by HRDC, 5 are available through Hamilton, 3 of which are dictionaries.

15.     Paragraph I.F of NDCS Policy 113.23 states that Special Canteen Orders may only be placed with authorized vendors. Among the criteria listed for selecting such vendors is whether it has an acceptable report from the Better Business Bureau ("BBB").

16.     Edward R. Hamilton is not BBB accredited and has a BBB rating of F.

17.     On at least six occasions, HRDC has been prevented from sending books to NDCS prisoners under the Approved Vendor Policy, specifically:

        a.      On or about July 13, 2021, NDCS inmate Joseph Boeggeman, Inmate No. 210960, was denied an exception to the Approved Vendor Policy so that he could order books from HRDC not available through Hamilton.

        b.      On or about September 28, 2021, Nebraska State Penitentiary inmate Luke LeFever, Inmate No. 89914, was provided a Notice of Held Mail stating that a title sent to him by HRDC—*Prisoners' Self-Help Litigation*

*Manual*—was held for the reason that it was sent from an "unauthorized vendor."

 c. On or about September 28, 2021, Nebraska State Penitentiary inmate David Ditter, Inmate No. 32547, was provided a Notice of Held Mail stating that a book sent to him by HRDC—*Protecting Your Health and Safety: A Litigation Guide for Inmates*—was held and would not be forwarded to Ditter.

 d. On or about September 29, 2021, Boeggeman received a publication sent to him by HRDC—*Protecting Your Health and Safety: A Litigation Guide for Inmates*. Boeggeman informed a Deputy Warden Freese of his receipt of the publication, to which Deputy Warden Freese responded that "[t]here are no exceptions with the book vendor," and that Boeggeman "will need to send that book out that wrongfully got through the mail to you."

 e. On or about October 2, 2021, an HRDC publication mailed to Nebraska State Penitentiary inmate Bob Hunt, Inmate No. 35947, was returned to sender as "REFUSED." The publication was *Protecting Your Health and Safety: A Litigation Guide for Inmates*.

 f. On or about October 12, 2021, a publication mailed by HRDC to Nebraska State Penitentiary inmate James Brady, Inmate No. 211616, was returned to sender as "REFUSED." The publication was *Protecting Your Health and Safety: A Litigation Guide for Inmates*.

18. The books held or returned to sender described in subparagraphs 10.c–f above were all mailings sent by HRDC on September 23, 2021.

19. In none of the instances described in subparagraphs 10.b–f above was HRDC provided notice, other than receipt of a returned package, that the

publications it sent to inmates were held under the Approved Vendor Policy, and in none of those instances was HRDC provided an opportunity to challenge the hold.

20.    The application of the Approved Vendor Policy to HRDC has damaged it through lost sales, the loss of the opportunity to HRDC to fulfill its mission and to engage in speech with inmates, and through other harm in an amount to be proved at trial.

21.    The application of the Approved Vendor Policy to HRDC has caused, and continues to cause, irreparable harm to HRDC by violating its rights under the United States Constitution.

22.    On or about September 2, 2021, HRDC directed a letter to the NDCS requesting that NDCS rescind the Approved Vendor Policy. A copy of that letter is attached hereto as **Exhibit B**.

23.    HRDC received a response from NDCS dated September 20, 2021 in which the NDCS asserted a single justification for the Approved Vendor Policy:

> The process is intended to prevent the introduction of illicit drugs into the facilities. Specifically, Liquid K2, a type of synthetic marijuana, has been introduced into facilities through various methods, including sprayed on pages of books. Liquid K2 is odorless and colorless and difficult to detect. Appropriate book order vetting is necessary to protect the safety and security of the facilities.

A copy of that response is attached hereto as **Exhibit C**.

24.    On November 23, 2021, a journalism report—*'It's Vital': Former inmate advocates for access to library in prison*— was published by KETV Omaha, reporting on the lack of libraries and of access to libraries among NDCS facilities (the "KETV Report"). The KETV Report featured recorded statements by Defendant Frakes and is available at <https://www.ketv.com/article/its-vital-former-inmate-advocates-for-access-to-library-in-prison/38337549>.

6

25.     Among the items reported in the KETV Report is that only five of NDCS's ten correctional facilities contain a formal library.

26.     Among the recorded statements by Defendant Frakes played in the KETV Report are the following statements by him:

      a.     In reference to some of the NDCS facilities that contain a formal library being available to inmates only four days a week, Defendant Frakes stated: "That has really, really limited access to the library in those locations."

      b.     Defendant Frakes further stated with respect to facilities limiting access to the library when they go on lockdown due to the State's staffing crisis: "Basically, everybody's probably getting about an hour of access a week, which is just enough time to get in, bring a book back."

      c.     In reference to inmate access to libraries, Defendant Frakes stated: "I think that's something that we can continue to get better at. It's not that it won't be a focus but it isn't right at this very moment."

27.     Director Frakes was formerly employed by the Washington State Department of Corrections, and in that role was a defendant in at least one lawsuit challenging the constitutionality of similar restrictions in which the plaintiff prevailed.

28.     Director Frakes knew, or should have known, that the Approved Vendor Policy violates the U.S. Constitution.

## <u>COUNT I—FIRST AMENDMENT VIOLATION</u>

29.     The Approved Vendor Policy unconstitutionally restricts HRDC's rights to engage in speech under the First Amendment to the U.S. Constitution.

30.     Defendant Frakes's approval and ongoing enforcement of the Approved Vendor Policy as the Director of Correctional Services has proximately caused HRDC damages and irreparable harm.

31.     Defendant Frakes's approval and ongoing enforcement of the Approved Vendor Policy is outrageous, intentional, and involves reckless or callous indifference to the federally protected rights of persons such as HRDC.

## COUNT II—PROCEDURAL DUE PROCESS VIOLATION

32.     The Approved Vendor Policy violates HRDC's right to adequate notice and an opportunity to respond to the rejection of publications it delivers to NDCS inmates and thereby violates HRDC's right to procedural due process under the Fourteenth Amendment to the United Stated Constitution.

33.     NDCS provides no process regarding its decisions to reject publications because it determines they are not sold by an approved vendor, because it determines they do not fall within the religious-publication or correspondence-course-or-educational-material exceptions to the Approved Vendor Policy, or otherwise.

34.     Defendant Frakes's approval and ongoing enforcement of the Approved Vendor Policy as the Director of Correctional Services has proximately caused HRDC damages and irreparable harm.

35.     Defendant Frakes's approval and ongoing enforcement of the Approved Vendor Policy is outrageous, intentional, and involves reckless or callous indifference to the federally protected rights of persons such as HRDC.

WHEREFORE, HRDC prays for judgment in its favor and against Defendant Frakes, for the following:

8

a. A declaration that the Approved Vendor Policy violates the First Amendment, and the Due Process Clause of the Fourteenth Amendment, to the United States Constitution.

b. A preliminary and permanent injunction against Defendant Frakes in his official capacity enjoining and restraining Defendant (including successors to his office), and Defendant's (and his official successors') agents, servants, deputies, designees, and representatives, and other persons under Defendant's (and his official successors') direction and control including NDCS employees and contractors, and any person in active concert or participation with the Defendant (and successors to his office), from enforcing the Approved Vendor Policy, and awarding such other equitable relief as may be appropriate.

c. An award to HRDC of compensatory damages, punitive damages, and/or nominal damages in an amount to be proven at trial against Defendant Frakes in his individual capacity.

d. An award to HRDC of full costs, including reasonable attorney's fees.

e. Any other relief this Court may deem just and appropriate.

[*Signature on next page.*]

HUMAN RIGHTS DEFENSE CENTER,
Plaintiff

By:     s/Nathan D. Clark
        Richard P. Jeffries, #20089
        Nathan D. Clark, #25857
        CLINE WILLIAMS WRIGHT
          JOHNSON & OLDFATHER, L.L.P.
        1900 U.S. Bank Building
        233 South 13th Street
        Lincoln, Nebraska 68508
        (402) 474-6900
        rickjeffries@clinewilliams.com
        nclark@clinewilliams.com

                *and*

        Dan Marshall, *pro hac vice pending*
        HUMAN RIGHTS DEFENSE CENTER
        P.O. Box 1151
        Lake Worth, Florida 33460
        (561) 360-2523
        dmarshall@humanrightsdefensecenter.org

4864-8583-0919, v. 5

# Exhibit A

| POLICY | INMATE ORDERS | | |
|---|---|---|---|
| | REVISION DATE | NUMBER | PAGE |
| | November 30, 2021 | 113.23 | 1 of 8 |

**NEBRASKA**

Good Life. Great Mission.

DEPT OF CORRECTIONAL SERVICES

STATEMENT OF AVAILABILITY
**\*This Policy is to be made available in law libraries or other inmate resource centers.**

EFFECTIVE:      December 31, 2015
REVISED:          October 31, 2016
REVISED:          October 31, 2017
REVISED:          October 31, 2018
REVISED:          December 31, 2019
REVISED:          December 31, 2020
REVISED:          November 30, 2021

SUMMARY of REVISION/REVIEW

Policy Directive 021-007 and 021-008 incorporated. PROCEDURE – I.B. – Language updated.  I.D. – Language updated. I.K.2. – Language updated.

APPROVED:

Scott R. Frakes, Director
Nebraska Department of Correctional Services

1

| NEBRASKA | POLICY | INMATE ORDERS | |
|---|---|---|---|
| Good Life. Great Mission. **DEPT OF CORRECTIONAL SERVICES** | REVISION DATE **November 30, 2021** | NUMBER **113.23** | PAGE **2 of 8** |

**STATEMENT OF AVAILABILITY**
***This Policy is to be made available in law libraries or other inmate resource centers.***

PURPOSE

To provide a uniform Nebraska Department of Correctional Services (NDCS) policy for inmates placing Special Orders, Hobby Orders, Director Orders and Miscellaneous Orders.

GENERAL

This procedure is applicable to all NDCS facilities. All information on inmates' accounts is confidential and can only be discussed with the inmate. Information on inmates' accounts that is provided to external sources must be by court order or to authorized law enforcement through Central Office Accounting.

PROCEDURE

I.      SPECIAL ORDERS

      A.      Canteen Special Orders

            Inmates shall be allowed a maximum of four canteen special orders per calendar year, including orders for recreational items such as sporting goods, music equipment, and related supplies. Some facilities may not allow all of these items to be ordered. An inmate may place one order in each of the following periods: January/February, March/April, July/August, and September/October. No special orders for these items may be placed in May, June, November, and December. Inmates at the Work Ethic Camp (WEC) may have limitations on what items may be ordered due to the nature of the program.

            Orders for the following items are not part of the four canteen special orders but are only allowed in the months noted above:

            1.      Repair orders

            2.      Watch batteries

            3.      Typewriters and typewriter accessories

            The date for determining the allowable orders in a calendar year shall be based on the posting date on the inmate's institutional account. Canteen Special Orders are due in NDCS Inmate Accounting five work days before the end of each two month time period to be assured they will be processed in the allowable period. Facilities should implement internal deadlines in order to meet this time frame.

            Insufficient fund orders may be resubmitted once within 30 days and the canteen fee will be waived. Insufficient fund orders count towards the allowable orders; however, the one allowed resubmission does not count. It is the inmate's responsibility to ensure that they have sufficient funds on their institutional account for special orders. Orders submitted in April and the inmate has insufficient funds may not be resubmitted in May and the canteen fee does not carry forward to July. Orders submitted in October and the inmate has insufficient funds may not be resubmitted in November and the canteen fee does not carry forward to January.

            Orders for flowers, items stocked in the canteen, items available through Direct Orders, or Gift Orders are not permitted.

| NEBRASKA | POLICY | INMATE ORDERS | |
|---|---|---|---|
| Good Life. Great Mission. | REVISION DATE<br>November 30, 2021 | NUMBER<br>113.23 | PAGE<br>3 of 8 |
| DEPT OF CORRECTIONAL SERVICES | STATEMENT OF AVAILABILITY<br>**\*This Policy is to be made available in law libraries or other inmate resource centers.** | | |

B.    <u>Religious Orders</u>

Religious items must be approved by the facility Religious Coordinator. Religious Orders can be ordered in any month and are not included in the four order limit. The Religious Coordinator will approve the order and forward to the canteen for processing.

C.    <u>Hobby Orders</u>

Hobby orders can only be placed with a vendor that has a catalog. A maximum of six hobby orders per calendar year will be allowed. Hobby orders will not be allowed in February and August.

Hobby orders are due in NDCS Inmate Accounting five work days before the end of each month to be assured they will be processed in that month. Hobby orders received within the last five work days of January and July will be returned to the facility unprocessed.

Insufficient fund orders may be resubmitted once within 30 days and the fee will be waived.

D.    <u>Processing of Orders</u>

Canteen, religious, and hobby orders will be processed on an Inmate Vendor Order Form (Attachment A). A catalog must be available for purchasing reference and items ordered must be in accordance with the Policy concerning property. The catalog generally should not be more than six months old.

A per-order handling charge of $1 will be assessed on all Canteen Special Orders. A per-order handling charge of five percent of the total merchandise, with a $1 minimum and a maximum of $5, will be assessed on all religious and hobby orders. No handling charge is assessed on Miscellaneous Orders. A stamped, addressed envelope must be attached to the order form, but institutional checks do not need to be attached. The handling charge will be collected or assessed on the suspense account even if non-sufficient funds are available for the vendor order. Refunds will not be made on the handling charge; however, if an order cannot be filled by the vendor, the inmate has 30 days to submit the same or similar purchase without an additional handling charge being assessed.

Orders may not be cancelled once they have left the institution. Orders to be cancelled due to an extraordinary circumstance will require notification to NDCS Inmate Accounting from the facility Business Office and require the approval of the Controller/designee.

An order should be grouped as follows: Inmate Vendor Order Form and an addressed stamped envelope. Orders sequenced in a different order may have delays in processing. This packet should preferably be stapled in the left corner. An addressed stamped envelope is not needed for Canteen Special Orders.

E.    <u>Item Warranty</u>

All orders are at the inmate's own risk. Special orders are subject to the warranty as provided by the vendor or manufacturer. Inmates sending items out for warranty work or repair must work through the canteen, hobby, or other area as applicable. Inmates are responsible for payment of all associated costs.

3

| NEBRASKA<br>Good Life. Great Mission.<br>**DEPT OF CORRECTIONAL SERVICES** | POLICY | INMATE ORDERS | |
|---|---|---|---|
| | **REVISION DATE**<br>November 30, 2021 | **NUMBER**<br>113.23 | **PAGE**<br>4 of 8 |
| | **STATEMENT OF AVAILABILITY**<br>***This Policy is to be made available in law libraries or other inmate resource centers.*** | | |

F.     <u>Authorized Vendors for Canteen Special Orders</u>

Canteen Special orders may only be placed with the designated vendors. Exceptions due to unique needs require Warden approval and will be reviewed by the Controller. Criteria for selecting vendors may include:

1.     Vendor must have been in business for at least five years

2.     History of doing individual sales in an institutional setting

3.     References will be obtained/provided documenting experience

4.     Must have an acceptable return/refund policy

5.     Must have a customer service representative to handle issues

6.     Acceptable Better Business Bureau Report

7.     Acceptance of State purchase card for payment

G.     <u>Direct Orders</u>

1.     Orders Allowed

Inmates shall not have a limit as to the number of Direct Orders they may process other than restrictions on property limits. Items available on Direct Order may not be ordered via a Special Order. Inmates at WEC may have limitations on what items may be ordered due to the nature of the program.

2.     Processing of Orders

Direct Orders shall be submitted to the facility canteen team members with the following information completed on the form, reference Inmate Direct Order form: (Attachment B)

a.     Inmate Number

b.     Inmate Name Printed – must be the inmates committed name

c.     Inmate Signature

d.     Facility

e.     Location

f.     Item Number – obtained from the listing or catalog

g.     Description of the item being ordered

h.     Size

**4**

    i.      Quantity

    j.      Price

    k.      Total

    l.      Sub-Total

Direct Order forms turned in to the canteen by Wednesday will be ordered the following Tuesday. The pink copy will be returned to the inmate when the order has been placed.

Orders will be debited from the inmates account via a canteen sale prior to the order being placed. Orders may not be cancelled once the sale has been processed in the Corrections Information and Tracking system. Should an inmate have insufficient funds for all items on a Direct Order a partial order will be processed based on the sequence the items are listed. Items not ordered will be lined through by canteen team members, initialed, and noted as insufficient funds.

Two insufficient funds for Direct Orders within a six month time period will place the inmate on a 60 day suspension of placing additional Direct Orders.

Goods will be received in the canteen and verified to the inmate's Direct Order. Goods will be issued in accordance with facility procedures. Inmates will be required to initial by each line when that item is received and sign the document when the Direct Order is complete. Inmates will sign the transaction tape and receive the yellow copy when the order is complete.

Generally, inmates will not be allowed to make exchanges for ordering the wrong size. Exceptions will be made when new clothing or shoe items are added to the Direct Order process until notice can be provided to inmates regarding the vendors sizing.

H.    Special/Direct Order Process

1.    The inmate initiates request to order (Attachment A) or (Attachment B).

2.    The order is submitted to canteen following facility guidelines.

3.    Institutional team members will check the Inmate Property List to see if inmate is eligible to possess item.

4.    If an inmate is not eligible to possess the item(s) – the order is returned to inmate as denied. Inmate will need to work with Institutional team members to become eligible to possess the item before the order is resubmitted.

5.    If an inmate is eligible to possess the item(s), the order is processed.

    a.    Inmate Vendor Order Form is approved. Religious Special Orders and Hobby orders are sent to Accounting

**5**

| | POLICY | | |
|---|---|---|---|
| **NEBRASKA** Good Life. Great Mission. **DEPT OF CORRECTIONAL SERVICES** | **INMATE ORDERS** | | |
| | **REVISION DATE** November 30, 2021 | **NUMBER** 113.23 | **PAGE** 6 of 8 |
| | **STATEMENT OF AVAILABILITY** ***This Policy is to be made available in law libraries or other inmate resource centers.*** | | |

       b.     Direct Order / Canteen Special Orders

          1)     Funds are removed from the Inmate's Account

          2)     Original Order Form is kept in Canteen

6.     The ordered items are received at facility.

7.     The order is inspected by Inmate.

       a.     If approved, the item is marked by Institutional team members and given to inmate

       b.     If disapproved for size or defect only, it is returned to vendor via call tag or inmate expense

8.     If item was ordered on exchange basis (see 3. above) – exchange must be made.

9.     The item is given to inmate.

10.     The inmate signs to register property and receives a copy.

       a.     If Inmate Vendor Order Form – inmate signs "Registration of Personal Property" and vendor order form (Attachment A)

       b.     If Direct Order – inmate signs 'Direct Order Form' (Attachment B)

11.     The property form is sent to Property Office.

12.     The property is added into Nebraska Inmate Case Management System.

I.     <u>Canteen Purchases</u>

Canteen sales are final. Issues with items must be identified at the time of purchase.

J.     <u>Debit Calling</u>

Debit calling time will be available to inmates for purchase in the canteen. All sales will be made in $2.50 increments and do not impact the inmate's spending limit. Institutions without a canteen will work with another institution to make debit-calling purchases available to their inmates.

Debit calling purchases will be sent daily via electronic file to the NDCS inmate calling telephone provider. Time purchased one day will usually be available at 8:00 AM the next day. The balance available for making calls will be announced in the calling instructions. NDCS team members does not have access to the inmate balances for debit calling.

Refunds will only be processed following an inmate's parole or discharge from NDCS. The balance will be returned to NDCS in the month following an inmate's release and will be included in the inmate's final check.

| POLICY | INMATE ORDERS | | |
|---|---|---|---|
| **REVISION DATE** November 30, 2021 | **NUMBER** 113.23 | **PAGE** 7 of 8 |

**NEBRASKA**
Good Life. Great Mission.
**DEPT OF CORRECTIONAL SERVICES**

STATEMENT OF AVAILABILITY
**\*This Policy is to be made available in law libraries or other inmate resource centers.**

Canteen team members can correct sale errors only if identified and corrected the same day as the sale.

K.      Miscellaneous Orders

1.      Magazines, subscriptions, books, books with CD's, and other periodicals ordered direct from the publisher or bookstore must be prepaid and routed through appropriate team members as defined by the facility. Such orders can be submitted in any month and are not included in the four order limit of canteen special orders.

2.      Inmates may only order books and receive books from Edward R. Hamilton. Any book orders received from other than Edward R. Hamilton will be returned to sender. Correspondence/college course books not available from Edward R. Hamilton shall be available as outlined in Policy 106.01, *Education Services*. Religious books not available from Edward R. Hamilton is identified in I.B. above.

3.      Orders may not be cancelled once they have left the institution. Orders to be cancelled due to an extraordinary circumstance will require notification to Accounting from the Business Office or the Warden and require the Controller's/designee's approval.

4.      The Inmate Miscellaneous Order form (Attachment C) and the institutional check must be outside the envelope for Accounting to process and prepare an Inmate Trust Fund check. An order should be grouped as follows: Institutional Check to Vendor, Self-Addressed Stamped Envelope, Inmate Miscellaneous Order Form all facing forward. Orders sequenced in a different order may have delays in processing. This packet should preferably be stapled in the left corner.

5.      Miscellaneous Orders other than newspapers can only be placed through a vendor that has a published catalog.

6.      Orders for mailing lists (such as pen-pals) and memberships are not allowed. Orders for pornographic materials are not allowed.

7.      Gift orders for magazines, subscriptions, books, books with CD's or other periodicals are not allowed.

REFERENCE

I.      STATUTORY REFERENCE – None noted

II.     NDCS POLICIES

A.      Policy 106.01, *Education Services*

III.    ATTACHMENTS

A.      Inmate Vendor Order Form – DCS-A-cnt-001

B.      Inmate Direct Order – DCS-A-cnt-005

7

| NEBRASKA | POLICY | INMATE ORDERS | |
|---|---|---|---|
| Good Life. Great Mission. | **REVISION DATE** | **NUMBER** | **PAGE** |
| | November 30, 2021 | 113.23 | 8 of 8 |
| DEPT OF CORRECTIONAL SERVICES | STATEMENT OF AVAILABILITY | | |
| | **\*This Policy is to be made available in law libraries or other inmate resource centers.** | | |

      C.      Inmate Miscellaneous Order – DCS-A-inm-001

IV.     AMERICAN CORRECTIONAL ASSOCIATION (ACA) – None noted

**Exhibit B**



# Human Rights Defense Center

### DEDICATED TO PROTECTING HUMAN RIGHTS

September 2, 2021

Scott Frakes, Director
Nebraska Dept. of Correctional Services
801 W. Prospector Place
Building 1
Lincoln, NE  68522

Sent via U.S. Certified Mail, Return Receipt Requested:  #70160910000180651106

**Re:  Ban on book publishers**

Dear Director Frakes,

I am the Executive Director of the Human Rights Defense Center (HRDC), the non-profit organization that publishes and distributes dozens of different softcover books about the criminal justice system, legal reference books, and self-help books of interest to prisoners.  It has come to HRDC's attention that the Nebraska Department of Correctional Services has enacted a policy whereby prisoners may only order books from a single publisher, Edward R. Hamilton.  Due to this policy, prisoners in Nebraska are being denied requests to order books from HRDC.  With this letter I have enclosed an example of a prisoner request that was denied.

Prisoners have a right to reading materials, and HRDC has a First Amendment right to communicate with prisoners, and to send publications to prisoners who request them.  *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989); *Prison Legal News v. Lehman,* 397 F.3d 692, 699 (9th Cir. 2005).  Any restriction on sources of books sent to prisoners must be done pursuant to a policy or practice that is "reasonably related to legitimate penological interests." *Thornburgh*, 490 U.S. at 413 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The decision to limit prisoners' access to a single publisher does not satisfy this standard and should be reversed.

Moreover, there are serious equal protection concerns when governmental agencies treat similar publishers differently.  There is no penological interest in allowing books to come from Edward R. Hamilton but not HRDC.

As there is no penological interest to justify the policy, I ask that you rescind the limitation on publishers who can send books to prisons under your authority, and allow prisoners in Nebraska to order books from HRDC.  If you need any additional information please do not hesitate to ask.  Thank you in advance for your consideration, I look forward to your prompt response.

Very Truly Yours,

Paul Wright
Executive Director
Human Rights Defense Center

Encl.

cc:  Daniel Marshall, HRDC General Counsel

NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES

# INMATE INTERVIEW REQUEST

TO: Asst. Warden Freese                    DATE: 7/13/2021

FROM: Joseph Boeggeman/210960          OCC      J3C10DL
                NAME / NUMBER              FACILITY      LOCATION

WORK LOCATION: _____ UNIT STAFF: _____

MESSAGE:   Sir,
I would like to order books from the Human Rights
Defense Center because the books I want are only
from this publisher and are not available through
the current and only authorized book vendor,
Edward R. Hamilton, Bookseller. I am requesting a
permanent exception to NDCS Policy 113.23 to obtain
them as I need and can afford them.

Thank you for your time and consideration.

_____

_____

_____

_____

_____

                                    _____
                                         Signature

ORIGINAL – DCS Employee
YELLOW – Inmate
Both copies need to be submitted for response.

REPLY: Mr. Booggeman,
currently the only Books that can be ordered
outside of Edward R. Hamilton are Correspondence/
College Books and Religious Books. I cannot
grant you an exception in this case.

_____                    _____
     7/14/21
        Date                              Signature

DCS-A-adm-013  (rev. 1/2017)

**Exhibit C**





Pete Ricketts, Governor

September 20, 2021

Mr. Paul Wright
Executive Director
Human Rights Defense Center
P.O. Box 1151
Lake Worth Beach, FL 33460
Via email: pwright@prisonlegalnews.org

Dear Mr. Wright:

This letter is in response to your correspondence regarding the Nebraska Department of Correctional Services (NDCS) book order process. This letter has been provided to Director Frakes and serves as the response to all similar letters received by NDCS officials regarding this issue.

In your letter, you contend NDCS has enacted a policy whereby prisoners may only order books from a single publisher, Edward R. Hamilton. However, while this publisher is the primary book vendor, the book order process provides prisoners the opportunity to request religious and educational book orders from additional vendors.

Moreover, the book order process is reasonably related to a legitimate penological interest under *Turner v. Safley*, 482 U.S. 78 (1987). The process is intended to prevent the introduction of illicit drugs into the facilities. Specifically, Liquid K2, a type of synthetic marijuana, has been introduced into facilities through various methods, including sprayed on pages of books. Liquid K2 is odorless and colorless

Scott R. Frakes, Director
**Dept of Correctional Services**
P.O. Box 94661 Lincoln, NE 68509-4661
Phone: 402-471-2654  Fax: 402-479-5623

**corrections.nebraska.gov**

Paul Wright
September 20, 2021
Page 2

and difficult to detect. Appropriate book order vetting is necessary to protect the safety and security of the facilities.

In sum, the book order process is not limited to one vendor and is reasonably related to a legitimate penological interest. NDCS intends to continue the process.

Best Regards,

Ryan Gilbride
Agency Legal Counsel